UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

05-30046-KPN

ALICE W. HALPIN,

          Plaintiff

v.

RDC OF CONNECTICUT, INC.,
R.D. CLARK AND SONS, INC.,
KATELAND LEASING, INC.,
PINNACLE TRANSPORTATION, INC.
and CHINA GROVE TRANSPORT,
INC.

          Defendants

**COMPLAINT**

U.S. DISTRICT COURT
DISTRICT OF MASS
2005 FEB 10  A 10: 35
FILED IN CLERKS OFFICE

## JURISDICTION

1.  This action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75.000.00.  Every issue of law and fact is wholly between citizens of different states.

2.  This Court has subject matter jurisdiction pursuant to 28 USC 1332(a)(1).

3.  Venue is proper in the Western Division of this District pursuant to 28 USC 1391(a)(2) and local Rule 40.1(D)(1)(c) of the United States District Court for the District of Massachusetts.

## PARTIES

4.  The Plaintiff, Alice W. Halpin, is an individual with a residence at 7 Cynthia Lane, Pittsfield, Massachusetts.

5.    The Defendant, RDC of Connecticut, Inc. (hereinafter "RDC"), is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

6.    The Defendant, R.D. Clark and Sons, Inc. (hereinafter "R.D. Clark") is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

7.    The Defendant, Kateland Leasing, Inc. (hereinafter "kateland") is a New York corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

8.    The Defendant, Pinnacle Transportation, Inc. (hereinafter "Pinnacle") is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

9.    The Defendant, China Grove Transport, Inc. (hereinafter "China") is a New York corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

## FACTS COMMON TO ALL COUNTS

10.    On or about November 1, 2003, RDC executed and delivered to the Plaintiff a Promissory Note in the principle sum of Four Hundred Thousand and 00/100 ($400,000.00) Dollars. (copy of said Promissory Note is annexed hereto as Exhibit "A") To date, said Note is in default.

11.    Said Note is guaranteed by R.D. Clark and Sons, Inc. and Caitlyn Leasing, Inc. (copy of said Guarantees are annexed hereto as Exhibit "B")

2

12.   The Plaintiff entered into a contract with China and Pinnacle whereby "EZ Pass" transponders on trucks owned and/or operated by China and Pinnacle would be billed to a credit card held by the Plaintiff.

13.   Pursuant to the terms of the contract, China and Pinnacle were required to reimburse the Plaintiff for any charges assessed to her credit card.

### COUNT I
### (Suit against RDC)

14.   The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 13 of her Complaint.

15.   Pursuant to the terms of the above referenced Promissory Note, RDC, was required to make monthly payments of principle and interest to the Plaintiff until the entire amount outstanding on the Promissory Note had been paid in full.

16.   RDC is in default under the terms of the Promissory Note.

17.   As a result of the default, RDC, is indebted to the Plaintiff under the terms of the Promissory Note in the sum of $400,000.00 as of February 1, 2005. Said sum is exclusive of legal fees, costs of collection, interest, and late charges.

WHEREFORE, the Plaintiff, Alice W. Harpin, prays that this Court:

    a.   Enter judgment for the Plaintiff on this Count;

    b.   Award the Plaintiff her costs to bring this action, including reasonable attorneys' fees; and

    c.   Grant any further relief as this Court may find just and proper.

3

## COUNT II
## (Suit against R.D. Clark)

18.    The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 17 of her Complaint.

19.    Pursuant to the terms of the above referenced guarantee, R.D. Clark, is required to satisfy the outstanding balance on the Promissory Note referenced in Count , should said Promissory Note be in default.

20.    R.D. Clark has failed and refused to satisfy the outstanding balance of the Promissory Note referenced in Count I.

21.    As a result of said default, R.D. Clark, is indebted to the Plaintiff under the terms of the guarantee in the sum of $400,000.00, as of February 1, 2005. Said sum is exclusive of legal fees, costs of collection, interest and late charges.

WHEREFORE, the Plaintiff, Alice W. Harpin, prays that this Court:

a.    Enter judgment for the Plaintiff on this Count;

b.    Award the Plaintiff her costs to bring this action, including reasonable attorneys' fees; and

c.    Grant any further relief as this Court may find just and proper.


## COUNT III
## (Suit against Kateland)

22.    The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 21 of her Complaint.

4

23.    Pursuant to the terms of the above referenced guarantee, Kateland, is required to satisfy the outstanding balance on the Promissory Note referenced in Count I, should said Promissory Note be in default.

24.    Kateland has failed and refused to satisfy the outstanding balance of the Promissory Note referenced in Count I.

25.    As a result of said default, Kateland, is indebted to the Plaintiff under the terms of the guarantee in the sum of $400,000.00 as of February 1, 2005. Said sum is exclusive of legal fees, costs of collection, interest and late charges.

WHEREFORE, the Plaintiff, Alice W. Harpin, prays that this Court:

a.    Enter judgment for the Plaintiff on this Count;

b.    Award the Plaintiff her costs to bring this action, including reasonable attorneys' fees; and

c.    Grant any further relief as this Court may find just and proper.


## COUNT IV
### (Suit against Pinnacle)

26.    The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 25 of her Complaint.

27.    Pursuant to the terms of the above referenced contract, Pinnacle is required to reimburse the Plaintiff for the charges assessed to her credit card.

28.    Pinnacle has failed and refused to do so.

29.    As a result, Pinnacle is indebted to the Plaintiff in the amount of approximately $12,000.00.

5

WHEREFORE, the Plaintiff, Alice W. Harpin, prays that this Court:

      a.    Enter judgment for the Plaintiff on this Count;

      b.    Award the Plaintiff her costs to bring this action, including reasonable attorneys' fees; and

      c.    Grant any further relief as this Court may find just and proper.

## COUNT V
## (Suit against China)

30.    The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 29 of her Complaint.

31.    Pursuant to the terms of the above referenced contract, China is required to reimburse the Plaintiff for the charges assessed to her credit card.

32.    China has failed and refused to do so.

33.    As a result, China is indebted to the Plaintiff in the amount of approximately $12,000.00

WHEREFORE, the Plaintiff, Alice W. Harpin, prays that this Court:

      a.    Enter judgment for the Plaintiff on this Count;

      b.    Award the Plaintiff her costs to bring this action, including reasonable attorneys' fees; and

      c.    Grant any further relief as this Court may find just and proper.

Respectfully submitted,
The Plaintiff,
Alice W. Halpin,
By her Attorney,

ROBERT S. MURPHY, JR., ESQ.
ADAM J. BASCH, ESQ.
BACON & WILSON, P.C.
33 State Street
Springfield, MA 01103
Ph:  (413) 781-0560
Fax:  (413) 739-7740
BBO# 550804
BBO# 655482
February  , 2005

366937

7

## TERM PROMISSORY NOTE

Pittsfield, Massachusetts
November 1, 2003

$400,000.00

FOR VALUE RECEIVED, RDC OF CONNECTICUT, INC., a Connecticut corporation ("RDC"), promises to pay to the order of ALICE W. HALPIN,. ("Halpin"), an individual with a mailing address at 7 Cynthia Lane, Pittsfield, Massachusetts, or at such other address as the holder hereof shall designate, the principal sum of FOUR HUNDRED THOUSAND DOLLARS AND 00/100 ($400,000.00), with interest thereon at the Berkshire Bank Base Rate plus two (2%) percent adjusted on the anniversary hereof and each anniversary thereafter, until paid in full, payable as follows:

A.    Commencing on December1, 2003 and on the same day of each month thereafter until November 1, 2004, all accrued and unpaid interest;

B.    Commencing on December 1, 2004 and monthly thereafter until November 1, 2009, equal monthly payments of principal of SIX THOUSAND SIX HUNDRED SIXTY SIX AND 67/100 ($6,666.67) DOLLARS, together with all accrued and unpaid interest; and

C.    One final payment consisting of any outstanding balance of principal, together with all accrued and unpaid interest and any accrued charges or other additions to principal, on November 1, 2009 (the "Maturity Date").

The Berkshire Bank Base Rate as applied to any adjustment hereunder shall be the Base Rate published by Berkshire Bank five (5) business days prior to the date such adjustment becomes effective. The interest rate for the period through November 1, 2004 shall be 6% per annum.

This Note is secured by a Subordinated Security Agreement of even date herewith given by RDC to Halpin on substantially all of the assets of RDC and by a Guaranty of R.D. Clark & Sons, Inc. ("R.D. Clark") which in turn is secured by a Subordinated Security Agreement of even date herewith given by R.D. Clark to Halpin on substantially all of the assets of R.D. Clark (the "Security"). The rights of Halpin in the Security are subordinated to the rights of Berkshire Bank pursuant to that certain Security Agreement of even date herewith among RDC, R.D. Clark & Sons, Inc., and Berkshire Bank.

Payments shall be applied first to late charges, then to interest and then to principal. If any installment of this Note becomes due and payable on any day upon which banks generally are legally closed for business, the due date shall be extended to the next succeeding business day.

RDC shall be entitled to prepay this Note in whole or in part at any time and from time to time without premium or penalty.

RDC shall be entitled to set off any and all amounts owing to RDC by Halpin (both individually and as executrix of the estate of R.J. Halpin) arising as a result of the breach by Halpin of any of the terms of (i) that certain Stock Purchase Agreement of even date herewith among RDC, Halpin and the other parties thereto and (ii) that certain lease of even date herewith between Halpin and RDC, against any amounts owing by RDC to Halpin hereunder.

The right of offset herein created shall be limited to the principal amount then outstanding under this Note. There shall be no right of offset with regard to any matters covered by a certain Escrow Agreement of even date providing for sums to be paid with regard to vehicle repairs as set forth herein.

As used in this Note, the term "Obligors" shall mean RDC, and any endorser, guarantor and surety of this Note or the obligations represented by this Note, and any other party to this Note.

Upon default for more than 10 days in the making of any payment of principal hereunder, RDC shall pay to Halpin upon demand, in addition to all other amounts payable hereunder, a late charge equal to five (5%) percent of the amount so overdue (but in no event higher than the maximum allowed by Massachusetts law).

Each of the following shall be deemed an "Event of Default":

1. If RDC shall default (i) in the payment of any installment of principal or interest for a period of 30 days after the due date, or (ii) in the payment of the principal balance plus accrued interest on the Maturity Date.

2. If one of the following acts of insolvency shall occur with respect to any Obligor or the property of any Obligor:

   insolvency, suspension of usual business; failure of business; assignment for the benefit of creditors or calling of a meeting of creditors preliminary thereto; appointment of a receiver, conservator, rehabilitator or similar officer for any Obligor or any property of any Obligor, which appointment shall not be removed within 60 days of appointment; the issuance of any attachment against any property of any Obligor, which shall not be removed or bonded within 60 days of issuance, or the taking of possession of, or assumption of control over, all or any substantial part of the property of any Obligor by the United States Government, foreign government (de facto or de jure) or any agency thereof; the filing of a voluntary petition in bankruptcy by any Obligor; or the commencement of any proceeding by any Obligor under any bankruptcy or debtor's law (or similar law analogous in purpose or effect) for the relief or reorganization of any Obligor or

for composition, extension, arrangement or readjustment of any of the obligations of any Obligor; the filing of an involuntary petition in bankruptcy against any Obligor, which filing shall not be dismissed within 60 days of filing.

Upon an Event of Default, the entire balance of this Note then remaining unpaid, together with any accrued interest and late charges thereon, shall, at the option of Halpin, become immediately due and payable, without demand or notice, together with all costs of collection, including reasonable attorney's fees. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default or breach.

The Obligors, and each of them, jointly and severally, waive presentment for payment, demand, notice, protest, and diligence in collection or bringing suit.

All parties now or hereafter liable for the payment of any of the indebtedness evidenced by this Note agree, by executing and endorsing this Note or by entering into or executing any agreement to pay any indebtedness hereby evidenced, that Halpin shall have the right, without notice and without in any way affecting the liability of any Obligor, to (a) accept partial payment, (b) exchange or release security or collateral, (c) deal in any way, at any time, with any parties liable for the indebtedness evidenced by this Note, or (d) grant to any party any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever.

In the event any payment of principal received in payment of this Note and paid by any Obligor shall be deemed by final order of a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under the bankruptcy or insolvency laws of the United States, or otherwise due to any party, other than Halpin, then the obligation of the RDC and any other Obligor of this Note shall, jointly and severally, survive as an obligation due hereunder, and no such Obligor shall be discharged or satisfied by said payment or payments, notwithstanding return by Halpin to said parties of this Note, or any guaranty, endorsement or the like.

Halpin may assign and transfer this Note to any person, firm or corporation and deliver to the assignee any collateral or security interest held by Halpin in connection with this Note; in the event of such assignment, Halpin shall have no further responsibility or liability with respect to such collateral or security interest and the terms of this Note shall inure to the benefit of the assignee and its successors. Any payments received by Halpin after the effective date of any such assignment shall be transferred by Halpin to the assignee.

If any provision of this Note is deemed by any court having jurisdiction thereon invalid or unenforceable, the balance of this Note shall remain in effect; if any provision of this Note is deemed by any such court to be unenforceable because such provision is too broad in scope, such provision shall be construed to be limited in scope to the extent such court shall deem necessary to make it enforceable; and if any provision is deemed inapplicable by any such

court to any person or circumstances, it shall nevertheless be construed to apply to all other persons and circumstances.

This document shall be construed in accordance with the substantive law of the Commonwealth of Massachusetts, without giving effect to the conflicts or choice of law provisions of Massachusetts or any other jurisdiction, and shall have the effect of a sealed instrument.

**RDC OF CONNECTICUT, INC.**

By:_____
Robert D. Clark, its President

Exhibit B

## UNLIMITED GUARANTY

TO:     **Alice Halpin, as Executrix of the Estate of Ronald J. Halpin** (the "Lender")

RE:     **RDC of Connecticut, Inc.** (the "Borrower")

To induce the Lender to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Lender to or for the account of the Borrower, the undersigned (the "Guarantor") absolutely and unconditionally guarantees the full and punctual payment to the Lender of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Lender from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against the Borrower, notwithstanding the discharge of the Borrower from such obligations, together with all costs and expenses incurred by the Lender in connection with such obligations, this Guaranty and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Lender. This is a guaranty of payment and not collection.

Guarantor also agrees:

(1)     to indemnify and hold the Lender and the Lender's directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender;

(2)     that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to the Guarantor;

(3)     that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Lender first to resort to any other right, remedy or security;

(4)     that the Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to the Lender;

(5)     that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6)     that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

(7)     that the Lender's books and records showing the account between the Lender and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)  that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(9)  that this Guaranty may be terminated as to the Guarantor only by giving the Lender sixty (60) days prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to the Guarantor only at the expiration of said sixty (60) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such transactions, and also extensions of credit made pursuant to a commitment previously made by the Lender;

(10) that the termination or dissolution of the Guarantor shall not effect the termination of this Guaranty as to the Guarantor;

(11) that termination of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(12) that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Lender with interest and costs of collection;

(13) that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the Obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Lender consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(14) that any and all present and future debts and obligations of the Borrower to the Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Lender;

(15) the Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender (or any of its banking or lending affiliates, any Lender acting as a participant under any loan arrangement between the Lender and the Guarantor or the Borrower or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates")) to the Guarantor and any property of the Guarantor at any time in the Lender's or any Lender Affiliate's possession whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or the Lender Affiliate had received the same or whether the Lender or the Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate;

(16) that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Lender to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of the Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall

continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of the Guarantor's obligations hereunder;

(17)  that any rights and remedies available to the Lender under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Lender;

(18)  that the Lender's delay or omission in exercising any of the Lender's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Lender's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Lender.  The Lender's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(19)  that this Guaranty incorporates all discussions and negotiations between the Lender and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Lender's duly authorized officer;

(20)  that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21)  that the Guarantor shall deliver to the Lender simultaneously herewith and within **90** days of the end of each year and upon request therefor, financial statements addressed to the Lender in form satisfactory to the Lender, and the Guarantor represents and warrants the accuracy of any information contained in any financial statement delivered to the Lender at any time and hereby agrees not to encumber any assets listed on any financial statements without the Lender's prior consent; and that so long as this Guaranty remains in effect, the Guarantor shall provide the Lender with the Guarantor's filed Federal and state tax returns for the prior year on within **90** days of the end of each fiscal year or such other date approved by the Lender.

The Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; any right to exoneration or marshalling; and, to the maximum extent permitted by law.  To the extent that it lawfully may, the Guarantor hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws.  Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

The Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

The execution and delivery of this Guaranty is in furtherance of the Guarantor's corporate purposes, is not contrary to or in violation of its charter or by-laws and the person executing this Guaranty on the Guarantor's behalf has been duly authorized to do so.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of the Commonwealth of Massachusetts, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Lender's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

The Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. The Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

**THE GUARANTOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed as an instrument under seal and dated **November 1, 2003**.

Witness:

Guarantor:

**R. D. Clark & Sons, Inc.**

By: _____
Robert D. Clark, President

By: _____
James P. Clark, Treasurer

Address: **31 Robbinswood Drive
Wethersfield, Connecticut
06109**

## UNLIMITED GUARANTY

TO:     **Alice Halpin, as Executrix of the Estate of Ronald J. Halpin** (the "Lender")

RE:     **RDC of Connecticut, Inc.** (the "Borrower")

To induce the Lender to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Lender to or for the account of the Borrower, the undersigned (the "Guarantor") absolutely and unconditionally guarantees the full and punctual payment to the Lender of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Lender from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against the Borrower, notwithstanding the discharge of the Borrower from such obligations, together with all costs and expenses incurred by the Lender in connection with such obligations, this Guaranty and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Lender. This is a guaranty of payment and not collection.

Guarantor also agrees:

(1)     to indemnify and hold the Lender and the Lender's directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender;

(2)     that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to the Guarantor;

(3)     that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Lender first to resort to any other right, remedy or security;

(4)     that the Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to the Lender;

(5)     that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6)     that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

(7)     that the Lender's books and records showing the account between the Lender and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)    that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(9)    that this Guaranty may be terminated as to the Guarantor only by giving the Lender sixty (60) days prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to the Guarantor only at the expiration of said sixty (60) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by the Lender;

(10)   that the termination or dissolution of the Guarantor shall not effect the termination of this Guaranty as to the Guarantor;

(11)   that termination of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(12)   that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Lender with interest and costs of collection;

(13)   that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the Obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Lender consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(14)   that any and all present and future debts and obligations of the Borrower to the Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Lender;

(15)   the Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender (or any of its banking or lending affiliates, any Lender acting as a participant under any loan arrangement between the Lender and the Guarantor or the Borrower or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates")) to the Guarantor and any property of the Guarantor at any time in the Lender's or any Lender Affiliate's possession whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or the Lender Affiliate had received the same or whether the Lender or the Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate;

(16)   that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Lender to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of the Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall

continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of the Guarantor's obligations hereunder;

(17)  that any rights and remedies available to the Lender under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Lender;

(18)  that the Lender's delay or omission in exercising any of the Lender's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Lender's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Lender. The Lender's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(19)  that this Guaranty incorporates all discussions and negotiations between the Lender and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Lender's duly authorized officer;

(20)  that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21)  that the Guarantor shall deliver to the Lender simultaneously herewith and within 90 days of the end of each year and upon request therefor, financial statements addressed to the Lender in form satisfactory to the Lender, and the Guarantor represents and warrants the accuracy of any information contained in any financial statement delivered to the Lender at any time and hereby agrees not to encumber any assets listed on any financial statements without the Lender's prior consent; and that so long as this Guaranty remains in effect, the Guarantor shall provide the Lender with the Guarantor's filed Federal and state tax returns for the prior year on within 90 days of the end of each fiscal year or such other date approved by the Lender.

The Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; any right to exoneration or marshalling; and, to the maximum extent permitted by law. To the extent that it lawfully may, the Guarantor hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

The Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

The execution and delivery of this Guaranty is in furtherance of the Guarantor's corporate purposes, is not contrary to or in violation of its charter or by-laws and the person executing this Guaranty on the Guarantor's behalf has been duly authorized to do so.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of the Commonwealth of Massachusetts, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Lender's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

The Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. The Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

**THE GUARANTOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED.  THE GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed as an instrument under seal and dated **November 1, 2003**.

Witness:

Guarantor:

**KATELAND LEASING, INC.**

By: _____
Robert D. Clark, President

By: _____
Robert D. Clark, Treasurer

Address: **31 Robbinswood Drive**
**Wethersfield, Connecticut**
**06109**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Alice W. Halpin

## DEFENDANTS

RDC of Connecticut, Inc., R.D. Clark and Sons, Inc., Kateland Leasing, Inc., Pinnacle Transportation, Inc. and China Grove, Transport, Inc.

**(b)** County of Residence of First Listed Plaintiff    Berkshire
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Wethersfield, CT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Adam J. Basch, Esq., Bacon & Wilson, P.C. (413) 781-0560
33 State St., Springfield, MA 01103

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☒ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Suit on a Promissory Note.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 400,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                DOCKET NUMBER

DATE  2/9/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

305885

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) __Halpin v. RDC of Connecticut, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

   [X]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.    150, 152, 153.

   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   __Not applicable.__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)    YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?    YES [ ]    NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?    YES [ ]    NO [ ]

   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).    YES [ ]    NO [X]

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division [ ]    Central Division [ ]    Western Division [X]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ___Adam J. Basch, Esq.___

ADDRESS __Bacon & Wilson, P.C. 33 State Street, Springfield, MA 01103__

TELEPHONE NO. __(413) 781-0560__

(Coversheetlocal.wpd - 10/17/02)