UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30046-KPN



| ALICE W. HALPIN, |
| --- |
| Plaintiff, |
| v. |
| RDC OF CONNECTICUT, INC., R.D. CLARK AND SONS, INC., KATELAND LEASING, INC., PINNACLE TRANSPORTATION, INC. and CHINA GROVE TRANSPORT, INC., |
| Defendants. |

### ANSWER TO COMPLAINT OF ALICE W. HALPIN

Now come the Defendants, RDC of Connecticut, Inc., R.D. Clark & Sons, Inc., Kateland Leasing, Inc., Pinnacle Transportation, Inc. and China Grove Transport, Inc., and answer the Complaint of Plaintiff, Alice W. Halpin, as follows.

1. The Defendants admit the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2. The Defendants admit the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3. The Defendants admit the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4. The Defendants admit the allegations contained in Paragraph 4 of Plaintiff's Complaint.

5. The Defendants admit the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6. The Defendants admit the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7. The Defendants admit the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8. The Defendants admit the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9. The Defendants admit the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10. The Defendant RDC of Connecticut, Inc. ("RDC") admits that "On or about November 1, 2003, RDC executed and delivered to the Plaintiff a Promissory Note in the principal sum of Four Hundred Thousand and 00/100 Dollars" (the "Note") but denies that the Note is in default.

11. The Defendants R.D. Clark & Sons, Inc. ("R.D. Clark") and Kateland Leasing, Inc. ("Kateland") admit the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12. The Defendants China Grove Transport, Inc. ("China Grove") and Pinnacle Transportation, Inc. ("Pinnacle") deny the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13. The Defendants, China Grove and Pinnacle deny the allegations contained in Paragraph 13 of Plaintiff's Complaint.

## COUNT I
### (Suit against RDC)

14. The Defendant, RDC, repeats each of its answers to the Plaintiff's allegations against it contained in Paragraphs 1 through 13 of Plaintiff's Complaint.

15. The Defendant, RDC, denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16. The Defendant, RDC, denies the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17. The Defendant, RDC, denies the allegations contained in Paragraph 17 of Plaintiff's Complaint.

## COUNT II
### (Suit against R.D. Clark)

18. The Defendant, R.D. Clark, repeats each of its answers to the Plaintiff's allegations against it contained in Paragraphs 1 through 17 of Plaintiff's Complaint.

19. The Defendant R.D. Clark, admits the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20. The Defendant, R.D. Clark, denies the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21. The Defendant, R.D. Clark, denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

## COUNT III
### (Suit against Kateland)

22. The Defendant, Kateland, repeats each of its answers to the Plaintiff's allegations against it contained in Paragraphs 1 through 21 of Plaintiff's Complaint.

23. The Defendant, Kateland, admits the allegation contained in Paragraph 23 of Plaintiff's Complaint.

24. The Defendant, Kateland, denies the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25. The Defendant, Kateland, denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

## COUNT IV
### (Suit against Pinnacle)

26. The Defendant, Pinnacle, repeats each of its answers to the Plaintiff's allegations against it contained in Paragraphs 1 through 25 of Plaintiff's Complaint.

27. The Defendant, Pinnacle, denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28. The Defendant, Pinnacle, denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29. The Defendant, Pinnacle, denies the allegations contained in Paragraph 29 of Plaintiff's Complaint.

## COUNT V
### (Suit against China Grove)

30. The Defendant, China Grove, repeats each of its answers to the Plaintiff's allegations against it contained in Paragraphs 1 through 29 of Plaintiff's Complaint.

31. The Defendant, China Grove, denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32. The Defendant, China Grove, denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33. The Defendant, China Grove, denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE
### (Failure to State a Claim)

The Plaintiff's Complaint fails to state a claim against any of the Defendants, upon which relief can be granted.

### SECOND DEFENSE
### (Set-Off)

The Plaintiff's claim against the maker of the Note, RDC, and accordingly against the Guarantors of the Note (R.D. Clark and Kateland) are subject to set-off, in full, pursuant to the

terms of the Note, the Stock Purchase Agreement executed between the parties in conjunction with the Note, and the Lease executed between the parties in conjunction with the Note.

### THIRD DEFENSE
### (Unclean Hands)

The Plaintiff is barred from recovery against each of the Defendants by the Doctrine of Unclean Hands.

### FOURTH DEFENSE
### (Estoppel)

The Plaintiff is barred from recovery against each of the Defendants by the Doctrine of Estoppel.

### FIFTH DEFENSE
### (Failure of Substantial Performance)

The Plaintiff is barred from recovery in that her own breach of the Stock Purchase Agreement and Lease executed in conjunction with the Note and failure to substantially perform her obligation under those Agreements precludes her from recovery on the Note.

### SIXTH DEFENSE
### (Surety Defenses)

The Plaintiff is barred from recovery against R.D. Clark and Kateland by virtue of surety defenses to which they are entitled.

### COUNTERCLAIMS

### COUNT I
### (Breach of Contract)

1. The Plaintiff-in Counterclaim, RDC, is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

2. The Defendant-in-Counterclaim, Alice W. Halpin ("Halpin"), is an individual with a residence at 7 Cynthia Lane, Pittsfield, Massachusetts.

3. The Defendant-in-Counterclaim, Halpin, as Executrix of the Estate of Ronald J. Halpin ("Executrix"), is an estate fiduciary, with an address at 7 Cynthia Lane, Pittsfield, Massachusetts.

4. RDC and Executrix are parties to a Stock Purchase Agreement dated as of November 1, 2003 (the "Stock Purchase Agreement") pursuant to which RDC purchased from Halpin and Executrix all of the issued and outstanding shares of Kateland, Pinnacle, and China Grove, each of which were are engaged in the business of transporting petroleum products.

5. RDC and Halpin are parties to a Lease dated November 1, 2003 (the "Lease") pursuant to which RDC leases from Halpin the land and buildings located at 645 Pleasant Street, Lee, Massachusetts (the "Premises") and from which RDC operates its, and its subsidiaries', transportation, truck leasing and truck maintenance business. Pursuant to the Lease, RDC also assumed responsibility for certain subleases on the Premises, which subleases were assigned to RDC by Halpin.

6. RDC, Halpin and Executrix are parties to a Sale and Purchase Agreement dated as of October 31, 2003 (the "Asset Purchase Agreement") pursuant to which RDC purchased, for $200,000 paid at closing, certain assets of Tartan Maintenance Management, a Massachusetts corporation of which Halpin and Executrix are the sole shareholders.

7. Pursuant to the Stock Purchase Agreement and the Asset Purchase Agreement, RDC paid to Halpin and Executrix $2,875,000 in cash at closing and simultaneously executed and delivered the Note in the amount of $400,000.

8. In or about February 2004, RDC, without obligation to do so, paid to Halpin and Executrix an additional $60,000 to defray the sales-tax obligations of Executrix arising from

the transactions described in the Stock Purchase Agreement and the Asset Purchase Agreement.

9. The Note provides in pertinent part that:

> RDC shall be entitled to set off any and all amounts owing to RDC by Halpin (both individually and as executrix of the estate of R.J. Halpin) arising as a result of the breach by Halpin of any of the terms of (i) that certain Stock Purchase Agreement of even date herewith among RDC, Halpin and the other parties thereto, and (ii) that certain Lease of even date herewith between Halpin and RDC, against any amounts owing by RDC to Halpin hereunder.

10. The Stock Purchase Agreement provides in pertinent part in Section 9.3 that:

> In the event [that Halpin] shall be in breach of any representation, warranty, covenant or shall have an indemnification obligation to RDC, RDC shall be permitted to seek satisfaction of such amounts through an offset against the balance then due under the Note. No limitation on such right of offset shall otherwise affect RDC's rights hereunder or otherwise. The remedy of offset shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which RDC is or may be entitled at law or equity, under this Agreement.

11. Halpin and Executrix are and have been in material breach of several of the representations, warranties and covenants contained in the Stock Purchase Agreement, as set forth in Paragraphs 12 through 30 below.

12. In Section 4.10(c) of the Stock Purchase Agreement, Executrix represented that each of the corporations, including Pinnacle:

> . . . is and has been in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements

13. At the time representation in Section 4.10(c) of the Stock Purchase Agreement was made, Executrix was aware of the fact that an employee of Pinnacle named Yvon C. Demers had been injured on the job when Pinnacle was owned by Executrix or her predecessor in

interest and that Mr. Demers was not covered by workers' compensation insurance at the time he sustained his work injury. Executrix had paid Mr. Demers cash of an unknown amount in lieu of workers' compensation benefits.

14.     Without disclosure to RDC, Executrix inflated the represented salaries of her children, Susan Halpin and Mark Halpin, and after the closing, without the knowledge of RDC, Susan and Mark diverted a portion of what was represented to RDC to be their salaries to Mr. Demers. The amount of estimated diverted pay is in excess of $42,000, and Mr. Demers retains claims against Pinnacle.

15.     On or about March 7, 2004, more then four months after RDC's purchase of the stock of China Grove, Halpin directed a payment of $1,450.44 via China Grove check number 3128 to Susan Halpin who, on information and belief, cashed the check and forwarded the cash to Mr. Demers. This diversion of China Grove funds was undertaken without the knowledge or consent of China Grove or RDC.

16.     In Section 4.17 of the Stock Purchase Agreement, Executrix represented to RDC that each of the corporations:

> . . . has complied and is currently in compliance, in all material respects, with all laws, regulations, rules, orders, permits, judgments, decrees and other requirements and policies imposed by any Governmental or Regulatory Authority applicable to it, its properties or the operation of its business. . . . . there exists no condition, situation or circumstance, nor has there existed such a condition, situation or circumstance, which, after notice or lapse of time, or both, would constitute noncompliance with or give rise to future liability with regard to [noncompliance with governmental or regulatory authority] . Each of the Corporations has all licenses, permits, approvals, qualifications or the like, from any Government, Governmental or Regulatory Authority or any third party necessary for the conduct of each of the Corporation's Business and all such items are in full force and effect.

17.     In Section 4.18 of the Stock Purchase Agreement, Executrix represented to RDC that each of the Corporations has complied with and is currently in compliance with all

"Environmental and Safety Requirements" as defined in said Section 4.18 to include federal, state and local laws and regulations concerning public health and safety, worker health and safety and pollution or protection of the environment. In that:

> . . . no facts, events or conditions relating to the past or present properties, facilities or operations of any of the Corporations . . . give rise to any corrective, investigatory or remedial obligations pursuant to Environmental and Safety Requirements or give rise to any other Liabilities pursuant to Environmental and Safety Requirements . . . .

18. In Section 4.13(c) of the Stock Purchase Agreement, Executrix represented to RDC that:

> All of the vehicles and other machinery and equipment listed on Schedule 4.13(b) are in good working order and condition, ordinary wear and tear excepted.

19. Each of the petroleum-hauling trailers owned by the corporations require periodic inspection to conform to U.S. Department of Transportation ("DOT") laws and regulations. Upon inspection by RDC prior to the closing, the trailers bore current inspection stickers, indicating compliance with DOT requirements. After closing and upon random inspection by DOT, RDC learned that the DOT inspection stickers affixed to the trailers had been fraudulently attached to the trailers without Executrix or her predecessor having conducted and documented the necessary inspections.

20. In or about March 2004, Executrix paid a fine to the DOT, and RDC incurred maintenance bills in excess of $187,000.00 for required maintenance to obtain properly affixed inspection stickers.

21. Notwithstanding the representations contained in Section 4.17 of the Stock Purchase Agreement referred to in Paragraph 16 above, RDC learned after closing that the initial and recurring training of drivers and record keeping required by DOT Regulations at 49 CFR

§172.704 had not been performed by Executrix or her predecessors in interest. RDC expended $4,000 for initial hazmat training for employees who were employed by the Corporations at the time of closing.

22. Notwithstanding the representations contained in Section 4.10(c) and 4.17 of the Stock Purchase Agreement referenced in Paragraphs 12 and 16 above, RDC learned, after closing, that drug testing for employees mandated by DOT Regulations 49 CFR §40 had not been performed. RDC expended $15,000 to conform with these DOT requirements.

23. Notwithstanding the representations contained in Section 4.18 of the Stock Purchase Agreement referenced in Paragraph 17 above, after the closing, RDC received inquiry from the Massachusetts Department of Environmental Protection ("DEP") for alleged violations by Executrix and her predecessor in interest for mixing waste oil and other hazardous contaminants with #6 fuel oil and delivering such contaminated products to its customers. While this investigation is ongoing, RDC incurred in excess of $5,000 for legal and environmental consultant time to respond to this DEP investigation of Executrix.

24. Notwithstanding the representations contained in Section 4.17, of the Stock Purchase Agreement referred to in Paragraph 16 above and as a direct and proximate result of the failure to properly hazmat train employees, RDC incurred expense in the approximate amount of $167,200 for lost product resulting from spoilage of 88,000 gallons of petroleum product improperly unloaded by employees inherited by RDC and an additional $21,000 for a hazardous material spill caused by one such improperly untrained driver.

25. Notwithstanding the provisions of Section 4.13(c) of the Stock Purchase Agreement referred to in Paragraph 18 above, Executrix or her predecessor in interest had knowingly and intentionally disassembled certain internal mechanisms in the cabs of the acquired tractors.

RDC has incurred expense in the approximate amount of $123,590 more than the escrow for repairs of identified deficiencies in this equipment.

26.  After the closing of the transaction and without RDC's knowledge or consent, Halpin caused her daughter, Susan, who continued to work for RDC, to charge significant amounts of company expense to Halpin's American Express card and to have Halpin's American Express card thereafter reimbursed from funds of RDC and its subsidiaries such that Halpin continued to obtain the benefit of frequent flyer miles at RDC expense and the benefit of having personal expenses of hers and her daughter's paid for by RDC, without its knowledge. The exact amount of this defalcation is unknown.

27.  In Section 4.11 of the Stock Purchase Agreement, Executrix represented that:

> Each of the Corporations has filed or caused to be filed with the appropriate Governmental or Regulatory Authority any and all Tax Returns . . . . Each of the Corporations has paid all Taxes shown as due, claimed to be due by any Governmental or Regulatory Authority, or accruable with respect to periods through the Closing Date . . . .

Tartan Maintenance Management, Inc. ("Tartan") purchased tires as a reseller without paying Massachusetts sales tax on such purchases. On information and belief and in breach of this representation, upon resale of the tires to Kateland, Pinnacle and China Grove, Tartan did not collect the required sales tax on such resale, exposing those entities to continuing sales tax liability from the Commonwealth of Massachusetts.

28.  Pursuant to Section 9.1(a) of the Stock Purchase Agreement, Executrix and Halpin, jointly and severally, agreed to indemnify, defend, protect and hold harmless RDC against any costs and expenses arising out of the matter referred to above, any inaccuracy of any representation or breach of warranty, failure to maintain licenses, permits, approvals and

qualifications from any Government or Governmental Regulatory Authority, including, reasonable attorneys' fees and disbursements of every kind.

29. RDC has expended in excess of $35,000 for reasonable attorneys' fees and accounting fees in enforcing its indemnification and set-off rights under the Stock Purchase Agreement.

30. Notwithstanding the representations contained in Sections 4.17 and 4.18 of the Stock Purchase Agreement referred to in Paragraphs 16 and 17 above, on information and belief, there exists an unpermitted, unlined landfill, containing, among other things, demolished motor vehicles lying under a substantial area of the Premises. This condition existed at the time of the closing and was known to Halpin and Executrix but not disclosed to RDC.

31. Pursuant to the Note, RDC paid interest expense from the closing through November 2004 in the total amount of $24,000, which, due to the breaches set forth above, should not have been paid and is therefore due to RDC.

32. On or about September 13, 2004 and again on December 10, 2004, RDC notified Halpin and Executrix of its set off of the full amount of the Note and reserved its rights to recover its damages in excess of the set-off amount. As a result of the substantial breaches of the representations and warranties set forth in the Stock Purchase Agreement and after set off of the full amount of the Note, RDC has incurred damages in excess of $225,000.

WHEREFORE, the Plaintiffs in Counterclaim, RDC, R.D. Clark, Kateland, Pinnacle and China Grove, request that this Court: (a) enter judgment for the Plaintiffs in Counterclaim on Count I of their Counterclaim in the amount of their actual damages, (b) award the Plaintiffs in Counterclaim their costs to bring this action, including attorneys' fees, each as required by the provisions of the Stock Purchase Agreement, and (c) grant such further relief as the Court may deem just and proper.

## COUNT II
### (93A)

33. RDC repeats each of the allegations set forth in Paragraphs 1 through 32 of its Counterclaim.

34. RDC, Halpin and Executrix each engage or engaged in trade or commerce as defined in Chapter 93A MGL §11.

35. The actions of Executrix set forth in Count I of the RDC's Counterclaim constitute knowing and intentional unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Chapter 93A MGL §11 entitling RDC to treble damages, attorneys' fees and costs.

36. As a result of the actions of Halpin and Executrix, RDC suffered a loss of money or property as set forth in Count I above.

WHEREFORE, the Plaintiffs in Counterclaim, RDC, R.D. Clark, Kateland, Pinnacle and China Grove, request that this Court: (a) enter judgment for the Plaintiffs in Counterclaim on Count II of their Counterclaim in the amount of their actual damages, trebled, plus their attorneys' fees and costs, and (b) grant such further relief as this Court may deem appropriate.

Respectfully submitted

RDC OF CONNECTICUT, INC.,
R.D. CLARK & SONS, INC., KATELAND
LEASING, INC., PINNACLE
TRANSPORTATION, INC. and CHINA GROVE
TRANSPORT, INC.,

Plaintiffs

By: *Michael E. MacDonald*
Their Attorneys
Michael E. MacDonald (BBO# 310610)
Diane M. DeGiacomo (BBO# 555930)

CAIN HIBBARD MYERS & COOK, P.C.
66 West Street
Pittsfield, MA 01201
Tel. No.: (413) 443-4771
Fax No.: (413) 443-7694

Dated: March 8, 2005

## CERTIFICATE OF SERVICE

I, Michael E. MacDonald, do hereby certify that a copy of the foregoing document has, on this 8 day of March, 2005, been served on the parties in this action by forwarding via first-class mail, postage prepaid to:

Adam J. Basch, Esq.
Bacon & Wilson, P.C.
33 State Street
Springfield, MA 01103

*Michael E. MacDonald*
Michael E. MacDonald