UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30046-KPN

ALICE W. HALPIN,

    Plaintiff,

v.

RDC OF CONNECTICUT, INC.,
R.D. CLARK AND SONS, INC., KATELAND LEASING, INC., PINNACLE TRANSPORTATION, INC. and CHINA GROVE TRANSPORT, INC.,

    Defendants.

and

RDC OF CONNECTICUT, INC.,

    Plaintiff-in-Counterclaim,

v.

ALICE W. HALPIN, INDIVIDUALLY and as EXECUTRIX OF THE ESTATE OF RONALD HALPIN,

    Defendants-in-Counterclaim.

**DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM**
**SPECIAL JURY VERDICT FORM**

Plaintiffs-in-Counterclaim's Claims Against the Defendants-in-Counterclaim:

1.    At the time of closing, were each of the corporations whose stock and assets were purchased by RDC (i.e. Kateland Leasing, Inc. ("Kateland"), Pinnacle Transportation Inc. ("Pinnacle"), and China Grove Transport Inc.("China Grove")) in compliance with all laws, regulations, rules, orders, permits, etc. imposed by any governmental or

regulatory authority concerning public health and safety, worker health and safety and pollution or protection of the environment?

Answer:    ____ YES         ____ NO

*If your answer to Question 1 is YES, go on to Question 8.  If your answer to Question 1 is NO, please go on to Question 2.*

2. At the time of closing, did Halpin represent that the employees of Kateland, Pinnacle and China Grove were properly trained for transporting and handling hazardous materials as required by the Department of Transportation ("DOT") Regulations?

    Answer:    ____ YES         ____ NO

    *If your answer to Question 2 is YES, go on to Question 3.  If your answer to Question 2 is NO, please go on to Question 5.*

3. At the time of closing, were the employees of Kateland, Pinnacle and China Grove properly trained for transporting and handling hazardous materials as required by DOT Regulations?

    Answer:    ____ YES         ____ NO

    *If your answer to Question 3 is YES, go on to Question 5.  If your answer to Question 3 is NO, please go on to Question 4.*

4. If you answered NO to Question 3, what amount of money do you find to be due and owing to RDC for having to properly train its employees for transporting and handling hazardous materials as required by DOT Regulations and for damages in lost product and cleanup costs resulting from the lack of proper training?

    Answer in Dollar and Cents: _____

    *Go on to Question 5.*

5. At the time of closing, did Halpin represent that drug testing or monitoring procedures were in place for employees as mandated by DOT Regulations?

    Answer:    ____ YES         ____ NO

    *If your answer to Question 5 is YES, go on to Question 6.  If your answer to Question 5 is NO, please go on to Question 8.*

6. At the time of closing, were drug testing or monitoring procedures in place for employees as mandated by DOT Regulations?

   Answer:     ____ YES          ____ NO

   *If your answer to Question 6 is YES, go on to Question 8.  If your answer to Question 6 is NO, please go on to Question 7.*

7. If you answered NO to Question 6, what amount of money do you find to be due and owing to RDC for having to implement drug testing and monitoring procedures for its employees as mandated by DOT Regulations?

   Answer in Dollar and Cents: _____

   *Go on to Question 8.*

8. At the time of closing, did Halpin represent that Pinnacle was and had been in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements?

   Answer:     ____ YES          ____ NO

   *If your answer to Question 8 is YES, go on to Question 9.  If your answer to Question 8 is NO, please go on to Question 11.*

9. At the time of closing, was Pinnacle in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements?

   Answer:     ____ YES          ____ NO

   *If your answer to Question 9 is YES, go on to Question 11.  If your answer to Question 9 is NO, please go on to Question 10.*

10. If you answered NO to Question 9, what amount of money do you find to be due and owing to RDC because of Halpin's misrepresentations about employment practices, terms and conditions of employment, and wages and hours, employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements?

    Answer in Dollar and Cents: _____

*Go on to Question 11.*

11. At the time of closing, did Halpin represent that each of Pinnacle, China Grove and Kateland has complied and is currently in compliance, in all material respects, with all laws, regulations, permits and other requirements and policies imposed by any governmental or regulatory authority applicable to it, its properties or the operation of its business and that each of the corporations has all licenses and permits necessary for the conduct of their business and such licenses and permits are in full force and effect?

    Answer:       \_\_\_\_ YES          \_\_\_\_ NO

    *If your answer to Question 11 is YES, go on to Question 12. If your answer to Question 11 is NO, please go on to Question 14.*

12. At the time of closing, had Halpin or her agents falsified the documentation and applied tank test inspection stickers as if such tests had been performed?

    Answer:       \_\_\_\_ YES          \_\_\_\_ NO

    *If your answer to Question 12 is YES, go on to Question 13. If your answer to Question 12 is NO, please go on to Question 14.*

13. If you answered YES to Question 12, what amount of money do you find to be due and owing to RDC because of Halpin's misrepresentation about the inspection stickers affixed to the trailers used to haul petroleum?

    Answer in Dollar and Cents: _____

    *Go on to Question 14.*

14. At the time of closing, did Halpin represent that the property leased by Halpin to RDC was in compliance with all environmental laws, except for those matters disclosed in the Baseline Environmental Study?

    Answer:       \_\_\_\_ YES          \_\_\_\_ NO

    *If your answer to Question 14 is YES, go on to Question 15. If your answer to Question 14 is NO, please go on to Question 17.*

15. At the time of closing, were the leased Premises in compliance all environmental laws, except for those matters disclosed in the Baseline Environmental Study?

    Answer:      ____ YES      ____ NO

*If your answer to Question 15 is YES, go on to Question 17. If your answer to Question 15 is NO, please go on to Question 16.*

16. If you answered NO to Question 15, what amount of money do you find to be due and owing to RDC because of Halpin's misrepresentation about the environmental condition of the leased real estate?

    Answer in Dollar and Cents: _____

    *Go on to Question 17.*

17. Was Halpin's daughter, Susan Halpin, an agent of Halpin prior to closing for purposes of negotiating the transaction documents and making the representations contained therein?

    Answer:      ____ YES      ____ NO

18. Was Halpin's daughter, Susan, an agent of Halpin following the closing for purposes of directing company monies to Halpin, Susan and Mark?

    Answer:      ____ YES      ____ NO

    *If your answer to Question 18 is YES, go on to Question 19. If your answer to Question 18 is NO, please go on to Question 20.*

19. Did Halpin's agent make unauthorized payments to herself, her brother and to Halpin from the Defendants' operating income?

    Answer:      ____ YES      ____ NO

    *If your answer to Question 19 is YES, go on to Question 20. If your answer to Question 19 is NO, please go on to Question 21.*

20. If you answered YES to Question 19, what amount of money do you find to be due and owing to RDC because of Halpin's agent's unauthorized payments to herself, her brother and to Halpin?

    Answer in Dollar and Cents: _____

    *Go on to Question 21.*

21. Was Halpin's son, Mark Halpin, an agent of Halpin prior to the closing for purposes of participating in the negotiating of the transaction documents and the representations contain therein and for purposes of overseeing the maintenance of tractors and trailers and RDC's inspection of tractors and trailer?

    Answer:  ____ YES        ____ NO

    *Please go on to Question 22.*

22. Prior to closing, did Halpin fail to disclose the existence of a worker's compensation claim or potential claim by Yvon Demers.

    Answer:  ____ YES        ____ NO

    *If your answer to Question 22 is YES, go on to Question 23. If your answer to Question 22 is NO, please go to Questions 25.*

23. After closing, did Halpin and her agents, Susan and/or Mark Halpin, make payments to Yvon Demers and take other steps to continue to actively hide the existence of a claim or potential claim by Mr. Demers against Pinnacle?

    Answer:  ____ YES        ____ NO

24. If you answered YES to either Questions 22 or 23, what damages are due and owning to RDC as a result of the existence of the workers' compensation claim or the potential workers compensation claim brought by Yvon Demers.

    Answer in Dollar and Cents: _____

25. At the time of closing, did Halpin and/or her agents fail to disclose the existence of a workers' compensation by Hans Valestin against China Grove?

    Answer:  ____ YES        ____ NO

    *Please go on to Question 26.*

26. After closing, while still employed by the Defendant corporations, did Halpin's agent make unauthorized purchases for the Defendant corporations on Halpin's personal credit card to, among other things, earn extra frequent flier miles for the Halpin?

    Answer:  ____ YES        ____ NO

    *If your answer to Question 26 is YES, go on to Question 27. If your answer to Question 26 is NO, please go on to Question 28.*

27. If you answered YES to Question 26, what amount of money do you find to be due and owing to RDC because of Halpin's agent's unauthorized purchases for the Defendant corporations on Halpin's personal credit card?

    Answer in Dollar and Cents: _____

    *Go on to Question 28.*

28. Did Halpin breach the representations and warranties set forth in the Stock Purchase Agreement so as to entitle RDC to a set-off of the amount due under the Promissory Note?

    Answer:     ____ YES          ____ NO

    *If your answer to Question 28 is YES, go on to Question 29.  If your answer to Question 26 is NO, please stop here, sign the verdict slip and return to the courtroom.*

26. If you answered YES to Question 26, what amount of set-off do you find RDC to be entitled to as a result of Halpin's substantial breaches of warranties and representations?

    Answer in Dollar and Cents: _____

    *Stop here, sign the verdict slip, and return to the courtroom.*

    Date: _____        Signature: _____
                                         Foreperson of the Jury