**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Civil Action No. 05-30046-KPN**

---

**ALICE W. HALPIN,**

    **Plaintiff,**

  v.

**RDC OF CONNECTICUT, INC.,**
**R.D. CLARK AND SONS, INC.,**
**KATELAND LEASING, INC.,**
**PINNACLE TRANSPORTATION, INC. and**
**CHINA GROVE TRANSPORT, INC.,**

    **Defendants.**

**and**

**RDC OF CONNECTICUT, INC.,**

    **Plaintiff-in-Counterclaim,**

  v.

**ALICE W. HALPIN, INDIVIDUALLY and**
**as EXECUTRIX OF THE ESTATE OF**
**RONALD J. HALPIN,**

    **Defendants-in-Counterclaim.**

---

**DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM**
**PRETRIAL MEMORANDUM**

1. <u>STATEMENT OF UNCONTESTED FACTS</u>

    a.    This Action and Counterclaim are civil in nature between citizens of different states involving damages in excess of $75,000. This Court has subject matter jurisdiction and venue is proper.

b.      The Plaintiff/Defendant-in-Counterclaim, Alice W. Halpin ("Halpin") is an individual with a residence at 7 Cynthia Lane, Pittsfield, Massachusetts.

c.      The Defendant-in-Counterclaim, Halpin, as Executrix of the Estate of Ronald J. Halpin ("Executrix") is an estate fiduciary with a residence at 7 Cynthia Lane, Pittsfield, Massachusetts.

d.      The Defendant/Plaintiff-in-Counterclaim, RDC of Connecticut, Inc. ("RDC") is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

e.      The Defendant, R.D. Clark and Sons, Inc. ("R.D. Clark") is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

f.      The Defendant, Kateland Leasing, Inc. ("Kateland") is a New York corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

g.      The Defendant, Pinnacle Transportation, Inc. ("Pinnacle") is a Connecticut corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

h.      The Defendant, China Grove Transport, Inc. ("China") is a New York corporation with a principal place of business at 31 Robbinswood Drive, Wethersfield, Connecticut.

i.      On November 4, 2003, RDC and Executrix entered into a Stock Purchase Agreement dated as of November 1, 2003 ("Stock Purchase Agreement") pursuant to which RDC purchased from Halpin and Executrix all of the issued and outstanding shares of Kateland, Pinnacle and China Grove.  Pinnacle and China Grove were in the business of transporting petroleum products.  Kateland operated as a leasing company.

j.      RDC and Halpin are parties to a Lease dated as of November 1, 2003 but executed on November 4, 2003 (the "Lease") pursuant to which RDC leases from Halpin the land and buildings located at 645 Pleasant Street, Lee, Massachusetts (the "Premises") and from which RDC operates its, and its subsidiaries, transportation, truck leasing and truck maintenance business.  Pursuant to the Lease, RDC also assumed responsibility for certain subleases on the Premises, which subleases were assigned to RDC by Halpin.

k.      RDC, Halpin and Executrix are parties to a Sale and Purchase Agreement dated as of October 31, 2003 but executed on November 4, 2003 (the "Asset Purchase Agreement") pursuant to which RDC purchased, for $200,000 paid at closing, certain assets of Tartan Maintenance Management, a Massachusetts corporation of which Halpin and Executrix are the sole shareholders.

l.      On November 4, 2003, pursuant to the Stock Purchase Agreement and the Asset Purchase Agreement, RDC paid to Halpin and Executrix $2,875,000 at closing and simultaneously executed and delivered to the Plaintiff a Promissory Note in the principal sum of Four Hundred Thousand and 00/100 ($400,000.00) Dollars ("Promissory Note").

m.      The Promissory Note is guaranteed by R.D. Clark and Kateland.

n.      The Promissory Note contains the following provision:

> RDC shall be entitled to set-off any and all amounts owing to Halpin by RDC (both individually and as executrix of the estate of R.J. Halpin) arising as a result of the breach by Halpin of any of the terms of (i) that certain Stock Purchase Agreement of even date herewith among RDC, Halpin and the other parties thereto, and (ii) that certain Lease of even date herewith between Halpin and RDC, against any amounts owing by RDC to Halpin hereunder.

o.      The Stock Purchase Agreement contains the following provision in Section 9.3:

> In the event [that Halpin] shall be in breach of any representation, warranty, covenant or shall have an indemnification obligation to RDC, RDC shall be permitted to seek satisfaction of such amounts through an offset against the balance then due under the Note. No limitation on such right of offset shall otherwise affect RDC's rights hereunder or otherwise. The remedy of offset shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which RDC is or may be entitled at law or equity, under this Agreement.

p.      Section 4.10(c) of the Stock Purchase Agreement, contains the following provisions, that each of the corporations, including Pinnacle:

> . . . is and has been in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements.

q.      Section 4.16 of the Stock Purchase Agreement contains the following provisions, regarding each of the corporations, including Pinnacle and China Grove:

> Except as set forth in Schedule 4.16, there is no litigation, suit, proceeding, action, claim, demand or investigation, at law or in equity, pending or to the knowledge of the Corporations and the stockholders threatened against or affecting any of the Corporations before any court, agency, authority or

arbitration tribunal, including, without limitation, . . . workers' compensation . . . or claims, actions, suits, demands or proceedings relating to toxic materials, hazardous substances, pollution or the environment. To the knowledge of the Corporations, and the stockholders, there are no facts that would likely result in any such litigation, suit, proceeding, action, claim or investigation.

Schedule 4.16 contained only the following disclosures:

### Schedule 4.16

### Litigation

1. Pinnacle-Allevo Worker's Compensation claim. Seller believes this case is settled.
2. China Grove — Pownal spill, as detailed in environmental reports prepared by ESC Marin dated February 8, 2000 and August 2003. (See Schedule 4.18) Seller believes current insurance is sufficient to cover any and all liability associated with this claim.

    r.    In Section 4.17 of the Stock Purchase Agreement, Executrix represented to RDC that each of the corporations:

> . . . has complied and is currently in compliance, in all material respects, with all laws, regulations, rules, orders, permits, judgments, decrees and other requirements and policies imposed by any Governmental or Regulatory Authority applicable to it, its properties or the operation of its business. . . . . there exists no condition, situation or circumstance, nor has there existed such a condition, situation or circumstance, which, after notice or lapse of time, or both, would constitute noncompliance with or give rise to future liability with regard to [noncompliance with governmental or regulatory authority] . Each of the Corporations has all licenses, permits, approvals, qualifications or the like, from any Government, Governmental or Regulatory Authority or any third party necessary for the conduct of each of the Corporation's Business and all such items are in full force and effect.

    s.    In Section 4.18 of the Stock Purchase Agreement, Executrix represented to RDC that each of the Corporations has complied with and is currently in compliance with all "Environmental and Safety Requirements" as defined in said Section 4.18 to include federal, state and local laws and regulations concerning public health and safety, worker health and safety and pollution or protection of the environment. In that:

> . . . no facts, events or conditions relating to the past or present properties, facilities or operations of any of the Corporations . . . give rise to any corrective, investigatory or remedial obligations pursuant to Environmental and

> Safety Requirements or give rise to any other Liabilities pursuant to Environmental and Safety Requirements . . . .

 t. In Section 4.13(c) of the Stock Purchase Agreement, Executrix represented to RDC that:

> All of the vehicles and other machinery and equipment listed on Schedule 4.13(b) are in good working order and condition, ordinary wear and tear excepted.

 u. In Section 4.11 of the Stock Purchase Agreement, Executrix represented that:

> Each of the Corporations has filed or caused to be filed with the appropriate Governmental or Regulatory Authority any and all Tax Returns . . . . Each of the Corporations has paid all Taxes shown as due, claimed to be due by any Governmental or Regulatory Authority, or accruable with respect to periods through the Closing Date . . . .

 v. Section 9.2.1 of the Lease contains the following provisions:

> Landlord shall defend, indemnify and hold harmless Tenant against any and all claims, damages, fines, judgments, penalties, costs, expenses or liabilities (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, consultant and expert fees) arising from or in connection with the presence or suspected presence of oil, hazardous substances or hazardous materials in, on or about the Premises (except to the extent that the oil, hazardous substances or hazardous materials are present as a result of the acts of Tenant, Tenant's agents, employees, contractors or invitees) or any release, removal and disposal of oil, hazardous substances and/or hazardous materials identified in the Baseline Study or to any action or omission having occurred prior to the Baseline Study that has found to have been a violation of federal, state or local laws, regulations, rules, bylaws or ordinances pertaining to Environmental protection.

2. <u>STATEMENT OF THE EXPECTED EVIDENCE</u>

 <u>Plaintiff</u>

 <u>Defendant</u>

 As set forth in the Statement of Undisputed Facts, Defendants entered into several agreements with the Plaintiff and the Executrix for the purchase of certain assets and stock of the Plaintiff's petroleum hauling businesses and a maintenance management company, as well as a Lease for the property on which the business operated. The Stock Purchase Agreement contained certain material representations, warranties and covenants, which were relied upon

by the Defendant, RDC, in its decision to enter into the Stock Purchase Agreement and associated documents.  RDC subsequently discovered that Halpin and the Executrix made several material breaches of those representations, warranties and covenants.  The evidence will show that Halpin and the Executrix and/or her children, acting as her agents, were fully aware of these breaches and failed to disclose them prior to closing or at the closing.

In one instance the Executrix represented that Pinnacle:

. . . is and has been in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements.

Stock Purchase Agreement, Section 4.10(c).  At the time of this representation, the Executrix was fully aware of the fact that an employee of Pinnacle had been injured on the job, and that Pinnacle had not obtained workers' compensation insurance at the time he sustained the injury.  At the same time, another worker's compensation claim was pending in New York State, against China Grove, and not disclosed.

Another material representation the Executrix made was that each of the corporations involved in the transaction has complied and is currently in compliance with all laws, regulations, rules, orders, permits, etc. imposed by any governmental or regulatory authority concerning public health and safety, worker health and safety and pollution or protection of the environment.

The evidence will show that, in fact, Ron Halpin and, later, Mark Halpin (in his father's name before and after his death) and then in his own name fabricated test results on DOT required tank tests on the company's trailers and illegally affixed inspection stickers without conducting the required tests.  In March 2004, about four months after the closing, DOT conducted an audit of Pinnacle and, as a result of Mark Halpin's admission of the illegal practice described above, ordered all Pinnacle trailers off the road immediately and stated its intention to return to audit Kateland and China Grove.  The Defendants incurred damages in excess of $400,000 to bring them in compliance with Department of Transportation ("DOT") Regulations to (i) get the required one and 5-year tank tests done, (ii) to do the necessary maintenance and repairs to cause the trailers to pass the tests, and (iii) to transport the empty trailers to multiple facilities to be washed out, tested, repaired, as necessary, and then to transport the empty trailers back to their normal place of business to be placed back in service to bring them in compliance with Department of Transportation ("DOT") Regulations.

Notwithstanding the Executrix's representations to the contrary, as a result of the same DOT audit, the Defendants learned that the corporations' employees were not properly trained for transporting hazardous materials as required by the DOT Regulations and the Defendants had to incur expenses to train the employees.

6

The evidence will further show that, despite representations to the contrary, there were no ongoing drug testing or monitoring procedures in place for employees as mandated by the DOT Regulations.  The Defendants had to incur expenses to put such procedures in place.

The evidence will also show that notwithstanding the Executrix's and Halpin's representations that the corporations were in compliance with all environmental and safety regulations and there were no corrective or remedial obligations that, on the day of closing, while the closing was occurring, the Massachusetts Department of Environmental Protection ("DEP") arrived at the Plaintiff's place of business to investigate several environmental complaints.  The evidence will show that Mark Halpin received a call, at the closing, concerning the DEP investigation and consciously chose to hide the existence of that investigation until approximately three months after the closing when DEP insisted on speaking with Robert Clark.  The Defendants will demonstrate the existence of additional environmental violations that Plaintiff's corporations were involved in and are responsible for, as well as additional obligations for hazardous material spills.  Additionally, there exists on the Premises an unauthorized, unlined landfill containing debris in violation of environmental regulations.

Finally, the parties had agreed that the Plaintiff's daughter, Susan Halpin, and Plaintiff's son, Mark Halpin, would each continue to work for the Defendants for one year after the closing of the transaction.  Susan continued as office manager and Mark continued as head of dispatch and oversaw the maintenance operation.  In her capacity as office administrator.  Susan, as Plaintiff's agent, made unauthorized payments to herself, her brother and to the Plaintiff from the Defendants operating income.  Susan made unauthorized purchases for the Defendant corporations on Plaintiff's personal credit card to earn extra frequent flier miles for the Plaintiff.

Pursuant to the terms of the Stock Purchase Agreement, the Halpin and the Executrix agreed to indemnify, defend, protect and hold harmless RDC against any costs and expenses arising out of any inaccuracy of any representation or breach of warranty, failure to maintain licenses, permits, approvals and qualification from any government or governmental regulatory authority, including reasonable attorneys' fees.  Furthermore, pursuant to the Stock Purchase Agreement and the Promissory Note, RDC is entitled to set-off rights for any of Halpin's or the Executrix's breaches.  Defendants have provided Halpin and the Executrix with Notice of the violations and set-off amounts, which completely set-off the entire amount of the Note.  In addition to the set-off, Defendants have incurred additional damages in excess of $225,000.

3. CONTESTED ISSUES OF FACT AND LAW

Plaintiff



Defendants

Whether at the time of closing each of the corporations was in compliance with all laws, regulations, rules, orders, permits, etc. imposed by any governmental or regulatory authority concerning public health and safety, worker health and safety and pollution or protection of the environment.

Whether at the time of closing, the corporations' employees were properly trained for transporting and handling hazardous materials as required by the DOT Regulations.

Whether at the time of closing, drug testing or monitoring procedures were in place for employees as mandated by the DOT Regulations.

Whether at the time of closing, Pinnacle was and had been in compliance with all applicable laws respecting employment and employment practices, terms and conditions of employment, and wages and hours, including without limitation any such laws regarding employment documentation . . . workers' compensation, family and medical leave . . . and occupational safety and health requirements.

Whether at the time of closing, there existed workers' compensation claims or claims relating to toxic materials, hazardous substances, pollution or the environment, including an active DEP investigation which were not disclosed to RDC.

Whether at the time of closing, all of the inspection stickers affixed to the trailers used to haul petroleum were fraudulently affixed by Halpin, her predecessor, in her capacity as Executrix, and her agent, her son, Mark Halpin.

Whether at the time of closing the corporations were in compliance with all environmental and safety regulations and there were no existing conditions which would require corrective or remedial obligations.

Whether Halpin's daughter, Susan Halpin, and her son, Mark Halpin, were each agents of Halpin and/or the Executor.

Whether Halpin's agent made unauthorized payments to herself, her brother and to Halpin from the Defendants operating income.

Whether Halpin's agent also made unauthorized payments to the employee who had allegedly hurt himself on the job, who was not covered under workers' compensation insurance without Defendants' knowledge.

Whether Halpin's agent made unauthorized purchases for the Defendant corporations on Plaintiff's personal credit card to earn extra frequent flier miles for the Plaintiff.

Whether any of the above listed breaches of representations and warranties represented a material breach of contract.

Whether RDC is entitled to set-off under the Promissory Note.

The amount of compensatory damages the Defendants incurred as a result of Halpin and the Executrix's breaches.

Whether Halpin or the Executrix willingly or knowingly made the misrepresentations and whether they constituted unfair and deceptive acts or practices.

Whether Halpin or the Executrix and the Defendants were engaged in trade or commerce under M.G.L. c. 93A, § 11.

4.   LIST OF WITNESSES

Plaintiff


Defendants

1.   Timothy McElroy, employee of Massachusetts Department of Environmental Protection, Western Regional Office Strike Force, 436 Dwight Street, Springfield, MA 01103. Mr. McElroy has knowledge concerning a DEP investigation of several matters which was made known to the Halpins on the day of closing.

2.   Dan Hill, former employee of RDC, Inc. and Tartan Maintenance Management, Inc., 68 South Main Street, Sheffield, Massachusetts 01257. Mr. Hill has knowledge concerning pre-existing conditions and prior practices of the Halpins and repairs to tractors/trailers.

3.   Jack Hoskins, Jr., employee of Bay State Truck & Trailer, Inc., 527 Winthrop Street, Rehoboth, Massachusetts 02769. Mr. Haskins has knowledge concerning the condition of the trailers at the time of DOT required inspections in the spring of 2004.

4.   Rick Samples, employee of Cummins Metro Power, Inc., Rocky Hill Branch, 914 Cromwell Avenue, Rocky Hill, Connecticut 06067. Mr. Samples has knowledge concerning the condition of the trucks at the time of the purchase by Defendants from the Halpins.

5.   Mike Pereslugoff, employee of Liberty Oil Equipment Co., Inc., 82 Cherry Street, East Hartford, Connecticut 06108. Mike has knowledge concerning the

        condition of the trailers at the time of DOT required inspections in the spring of 2004.

6. Peter Doolittle, employee of Auto, Truck & Equipment Service & Sales, 551 Main Street, Cromwell, Connecticut 06416. Mr. Doolittle has knowledge concerning the condition of the tractors and trailers prior to the purchase by Defendants from the Halpins.

7. William R. Clark, 25 Middleton Avenue, Wethersfield, Connecticut. Mr. Clark has knowledge concerning the condition of the trailers at the time of the purchase by Defendants from the Halpins.

8. Scott Pagliughi, employee of Tri-State Diesel Inc., Tri-State Kenworth, One Depot Hill Road, Enfield, Connecticut 06083, with the knowledge concerning the condition of the tractors at the time of purchase by Defendants from the Halpins.

9. Chip Howard, employee of Atlantic Star Trailers, East Horizons, Inc., 405 Industrial Avenue, Cheshire, Connecticut 06410, with knowledge concerning the condition of the trailers at the time of DOT required inspections in the spring of 2004.

10. Stephen A. Osit or Raymond Bengtson, Kaufman, Osit & Vasquez, P.C., Certified Public Accountants, 195 Farmington Avenue, Farmington, Connecticut 06032-1700. Messrs. Osit and Bengtson audited the records of RDC concerning misuse of funds at the direction of Susan Halpin and undisclosed sales tax liabilities which existed at the time of closing.

11. Neil Prevratil, employee of Wadhams Maintenance/ARG Trucking Corp., 369 Bostwick Road, Phelps, New York 14532, with knowledge concerning condition of the trailers at the time of DOT required inspections in the spring of 2004.

12. Employee of W. B. Hill, 305 Shaker Road, East Longmeadow, MA 01028 with knowledge of repairs needed for four trailers at the time of DOT required inspections in the spring of 2004.

13. Robert D. Clark, 31 Robbinswood Drive, Wethersfield, Connecticut 06109.

14. John D. Clark, 201 East Cotton Hill Road, Portland, Connecticut 06480.

15. Yvon C. Demers, 108 Bondsville Road, Ware, Massachusetts. Mr. Demers has knowledge concerning his job related injury prior to closing, conversations with

        Halpin or her agents and payments received from the corporations in lieu of workers' compensation payments.

16. Richard M. Berluti, President, Peterbilt of Connecticut, Inc., 207 Meadow Lane, Berlin, Connecticut 06037.  Mr. Berluti has knowledge concerning the amount of a deduction from trade in price for 13 tractors purchased by RDC from Halpin on which the air conditioners had been disabled.

21. Alice Halpin, 7 Cynthia Lane, Pittsfield, Massachusetts 01201.

22. Susan M. Halpin, 712 Barker Road, Pittsfield, Massachusetts 01201.

23. Mark Halpin, 70 Plumtree Drive, Valatia, NY.

5. <u>LIST OF EXHIBITS</u>

    <u>Plaintiff</u>

    <u>Defendants</u>

    a. Stock Purchase Agreement w/schedules
    b. Asset Purchase Agreement w/schedules
    c. Bill of Sale
    e. Master Ground and Building Lease
    e. Employment Agreement – Mark Halpin
    f. Employment Agreement – Susan Halpin
    g. Letter from Brazee & Huban dated October 31, 2003, regarding payment of taxes by the acquired companies through December 31, 2002
    h. One-Year Adjustable Term Note:  RDC to Berkshire Bank - $2,750,000
    i. Set-Off Notice dated September 13, 2004
    j. Set-Off Notice dated December 10, 2004
    k. Yvon Demers Documents (from Yvon Demers Deposition)
    l. $1,450 check diverted from RDC to Yvon Demers by Susan Halpin at the direction of Alice Halpin
    m. Halpin checks to Yvon Demers
    n. Notice of Judgment in New York worker's comp claim
    o. DOT Audit Documents
    p. Bill for Hazmat Training
    q. Bill for establishing Drug Test Protocol

  r. Documents from Tank Tests & Repairs from Bay State, Liberty Oil, Atlantic Star, Wadhams and W. B. Hill
  s. Shuffle/coverage Expense Documents
  t. Legal & Accounting Expenses to respond to DEP investigation
  u. Documents on Driver Releases
  v. Letter from Peterbuilt re: trade-in deduction for no A/C in tractors
  w. Susan Halpin Personal Charges
  x. American Express expense charges
  y. Calculation & back-up for Mass. Sales tax on tire inventory
  z. Attorney Fee bills on indemnity items and 93A claim
  aa. Checks to Alice from RDC for interest on Note
  bb. Site plan of the Premises
  cc. Various pictures of the Premises and conditions thereon
  dd. Baseline Environmental Study by ECS

6. <u>JUDICIAL NOTICE</u>

  The Defendants expect to request the Court to take judicial notice of applicable DOT Regulations and Connecticut worker compensation requirements and applicable Massachusetts and federal environmental law statutes and regulations.

7. <u>EXPECTED LENGTH AND NATURE OF TRIAL</u>

  The parties expect the trial to take one full week.

            Respectfully submitted,

|  | RDC OF CONNECTICUT, INC., R.D. CLARK AND SONS, INC., KATELAND LEASING, INC., PINNACLE TRANSPORTATION, INC. and CHINA GROVE TRANSPORT, INC., <br><br>Defendants, <br><br>and <br><br>RDC OF CONNECTICUT, INC., <br><br>Plaintiff-in-Counterclaim, <br><br>     /s/ Lisa M. McCormack<br><br>By:_____<br>   Their Attorneys<br>   Lisa M. McCormack (BBO #638735)<br>   Michael E. MacDonald (BBO #310610)<br>   Diane M. DeGiacomo (BBO #555930)<br>   Cain Hibbard Myers & Cook, P.C.<br>   66 West Street<br>   Pittsfield, MA  01201<br>   Tel. No.: (413) 443-4771<br>   Fax No.: (413) 443-7694 |
|---|---|

Dated:  June 13, 2006